UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GAL SPIEGLER,

                             Plaintiff,

-v-

MISH MISH INC.,

                             Defendant.

22 Civ. 8774 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Gal Spiegler brings this lawsuit against his former employer, Mish Mish Inc. ("Mish Mish"). Following the dismissal of Spiegler's other claims, *see* Dkt. 39, one claim for breach of contract remains, in which Spiegler contends Mish Mish breached by failing to pay him the compensation he was due under his employment agreement.

    Mish Mish now moves for summary judgment on the ground that Spiegler materially breached the agreement by working remotely from Israel rather than from Mish Mish's New York office and thus failed to substantially perform. In an April 22, 2025 Report and Recommendation, United States Magistrate Judge Gabriel W. Gorenstein recommended denying the motion on the ground that Spiegler had adduced sufficient evidence on which a reasonable jury could find that working from Mish Mish's New York office was not a material term. *See* Dkt. 78 (the "Report"). For the reasons that follow, the Court adopts the Report and denies Mish Mish's motion for summary judgment.

## I.   Background[1]

### A.   Factual Background

The Court incorporates by reference the summary of facts provided in the Report. *See* Report at 2–5. The following summary captures the limited facts necessary to assess the issues at hand.

#### 1.   The Parties

Mish Mish is a Delaware corporation with a principal place of business in New York. Pl. 56.1 ¶ 1; Def. 56.1 Reply ¶ 28. Spiegler is a citizen of Israel. Def. 56.1 ¶ 3. At the time he began working for Mish Mish in 2019, he was in the United States on a K-1 Visa.[2] *Id.* ¶¶ 3, 5.

---

[1] The Court draws the following facts from the parties' submissions in support of and in opposition to defendants' summary-judgment motion, including: (1) Mish Mish's memorandum in support of its summary-judgment motion, Dkt. 68 ("Def. Br."), Spiegler's opposition, Dkt. 70 ("Pl. Br."), and Mish Mish's reply, Dkt. 73 ("Def. Reply"); (2) the parties' Local Rule 56.1 statements in support of, Dkt. 69 ("Def. 56.1"), opposition to, Dkt. 72 ("Pl. 56.1"), and reply in support of, Dkt. 74 ("Def. 56.1 Reply") the summary-judgment motion; (3) the declaration of Elliott Hahn ("Hahn Decl."), with annexed exhibits, in support of the motion, Dkt. 66, and the declaration of Douglas Lipsky ("Lipsky Decl."), with annexed exhibits, in opposition to the motion, Dkt. 71; (4) Mish Mish's objections to the Report, Dkt. 82 ("Def. Obj."), and Spiegler's reply to the objections, Dkt. 85 ("Pl. Reply").

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts in a party's Rule 56.1 statement are supported by testimonial or documentary evidence and are denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2] K-1 visas permit the foreign fiancé of a U.S. citizen to enter the United States with the purpose of getting married within 90 days of arrival. *See* 8 U.S.C. § 1101(a)(15)(K)(i); 8 C.F.R. § 214.2(k).

2

### 2. Spiegler's Employment with Mish Mish

Mish Mish is a technology services start-up company founded by Mishelle Weinerman in March 2019. Pl. 56.1 ¶¶ 1, 4–5. Spiegler had met Weinerman in February 2019. *Id.* ¶ 4. At the time, he was not eligible to work in the United States because of his immigration status. *Id.*

In April 2019, Spiegler began performing computer technology services for Mish Mish without an employment agreement. *Id.* ¶ 5. He worked out of a WeWork remote office location leased by Mish Mish at 135 41st Street, New York, New York. *Id.* ¶ 6. Spiegler told Weinerman that, were he to continue working for Mish Mish in the United States, Mish Mish would "need to sponsor [his] employment visa." *Id.* ¶ 8. Mish Mish agreed to do so. *Id.* ¶ 12.

On December 15, 2019, Mish Mish and Spiegler executed a written employment arrangement. *Id.* ¶ 11; *see* Dkt. 66, Ex. D (the "Agreement"). It provided that Spiegler's employment was "contingent upon [his] receipt of a nonimmigrant visa to the United States" and that Mish Mish's failure to sponsor the visa would terminate the Agreement. *Id.* ¶ 6.

Under the terms of the Agreement, Spiegler's core job responsibilities included "planning and building the company's platform, including the technical infrastructure, administrative tools and client facing applications," "scaling the platform to support the growth of the business," and "hiring, training, and managing a team of engineers and data scientists." *Id.*, Schedule A (cleaned up). The Agreement set Spiegler's compensation at $240,000 per year. *Id.* Although Spiegler was paid some portion of that sum, he was ultimately paid less than the Agreement provided for. Pl. 56.1 ¶¶ 16–17.

Relevant here, the Agreement contains a "Place of Services" provision. It provides:

> The Employee shall provide Services under this Agreement and operate out of the offices of Company, and from virtual offices, including the Employee's home, as needed from time to time, but the Employee's primary office shall be the Company office listed in Schedule 'A', provided, however, that the Employee agrees to be

3

available, where requested and where necessary to perform the Services and his or her duties.

Agreement ¶ 4. Schedule A, in turn, identifies Mish Mish's "primary office" location as 135 West 41st Street in Manhattan, the WeWork office location at which Spiegler initially provided services for Mish Mish. *See id.* Schedule A; Pl 56.1 ¶¶ 6, 14. But Mish Mish's lease for office space at the 135 West 41st Street location had expired on September 30, 2019, before the date of the Agreement. Def 56.1 Reply ¶¶ 22, 26. Between October 1, 2019 and February 29, 2020, Mish Mish leased a different WeWork office space at 175 Varick Street in Manhattan. *See id.* ¶ 24. Upon expiration of the Varick Street lease, Mish Mish relocated to 205 Hudson Street, also in Manhattan. *Id.* ¶¶ 28–29. After the Hudson Street lease expired in summer 2020, Mish Mish "never signed another lease agreement." *Id.* ¶ 30.

### 3. Termination of Spiegler's Employment

In December 2019, Spiegler, shortly after entering into the Agreement, traveled to Israel. Pl. 56.1. ¶ 20. On February 26, 2020, he received his nonimmigrant visa, Def. 56.1 Reply ¶ 50, sponsored by Mish Mish, Pl. 56.1. ¶ 9. Spiegler did not return to the United States, however, until October 2023. *Id.* ¶ 20. Spiegler attests that he had booked a return flight to New York in February or March of 2020 but that the flight was "postponed and then canceled because of COVID." Def. 56.1 Reply ¶ 47. Mish Mish disputes this account, noting that Spiegler has not adduced documentary support for it. *Id.*

During his employment, Spiegler alleges that he "performed all work Weinerman gave him" and that Weinerman, who appears to have been his supervisor, "never complained to Spiegler" about his "not performing his duties." *Id.* ¶¶ 42–43. Mish Mish counters that, in fact, Spiegler did not complete his work in a timely manner. *Id.* Mish Mish further asserts that

4

collaborating with Spiegler was difficult with his working from outside New York, and that as a result, it "gave [him] less work than it otherwise would have." *Id.* ¶ 42.

In September 2020, Spiegler and Mish Mish terminated their working relationship. Pl. 56.1 ¶ 19.

### B. Procedural History

On October 14, 2022, Spiegler filed an initial complaint, which brought claims for violations of the New York Labor Law and breach of contract against Mish Mish and Weinerman. Dkt 1. On February 9, 2023, Mish Mish moved to dismiss, Dkt. 11, and filed a memorandum of law in support, Dkt. 12. On February 13, 2023, the Court referred the case to Judge Gorenstein for a Report and Recommendation. Dkt. 13. On March 28, 2023, Mish Mish filed the Amended Complaint, the operative complaint today, Dkt. 19. On October 11, 2023, following a renewed round of briefing on the motion to dismiss, Dkts. 26, 29, 32, Judge Gorenstein issued a Report and Recommendation recommending that all but the breach-of-contract claim be dismissed, Dkt. 34. On November 3, 2023, after no party objected to the Report, the Court adopted it in full. Dkt. 39.

On October 15, 2024, after completion of discovery, Mish Mish moved for summary judgment on the surviving breach-of-contract claim. Dkts. 65–68. On November 14, 2024, Spiegler opposed. Dkt. 70. On November 29, 2024, Mish Mish replied. Dkt. 73.

On April 22, 2025, Judge Gorenstein issued the Report recommending denial of Mish Mish's motion. Dkt. 78. The Report noted that the materiality of a breach is generally a mixed question of fact and law and thus is not properly disposed of by summary judgment. *See id.* at 8. It further found that Spiegler had adduced evidence on which a reasonable jury could find that his breach of the contractual requirement that he work from Mish Mish's New York office was

5

not material. *See id.* at 9–11. This evidence included that, on the date the agreement was signed, Mish Mish lacked a dedicated New York office at the address listed in the agreement but was instead renting three desks at a WeWork communal office; that Weinerman herself was working remotely when Spiegler left for Israel; that there was evidence that Spiegler had performed each task to which he was assigned; and that the Agreement itself permitted work from home "as needed from time to time." *Id.* at 3, 9–11. The Report also found that a jury could find, based on the COVID-19 epidemic during 2020, "that Spiegler's failure to go to New York was not willful." *Id.* at 11 (citation omitted). Thus, the Report concluded, a reasonable jury could reject Mish Mish's claim that "Spiegler's working in New York went to the 'root of the agreement between the parties'" and that his breach of that obligation was "'so substantial that it defeats the object of the parties in making the contract.'" *Id.* at 9 (citing *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997)). Viewing the evidence in the light most favorable to Spiegler, the Report concluded, a reasonable jury could find his having worked from Israel a non-material breach that did not affect the agreement's "central purpose." *Id.* at 10–11.

On May 16, 2025, Mish Mish filed objections to Judge Gorenstein's Report and Recommendation. Dkt. 82. On June 9, 2025, Spiegler replied. Dkt. 85.

## II.  Applicable Legal Standards

### A.  Report and Recommendation

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To

6

accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 2 Civ. 5810, 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

Where the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error. *See Dickerson v. Conway*, No. 8 Civ. 8024, 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). Further, courts "generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 8 Civ. 3782, 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011).

### B. Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. The Court must, in making this determination, view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant satisfies its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

7

for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### III. Discussion

Mish Mish moves for summary judgment on a single ground: that Spiegler materially breached the Agreement by working remotely from Israel rather than from Mish Mish's offices in New York, and therefore substantially breached. *See* Def. Br. at 1–2. In objecting to the Report's finding that summary judgment could not be entered in its favor on that point, Mish Mish retreads its arguments before Judge Gorenstein; to wit, that Spiegler's working from New York was the "*raison d'etre*" for the contract, Def. Obj. at 2, such that review for clear error would be appropriate. The Court nonetheless, in the interest of due care, reviews the issue de novo.

It is undisputed that the Agreement required Spiegler to work from Mish Mish's "primary office" at 135 West 41st Street; and that, between December 2019 and when he ceased working for Mish Mish in September 2020, he did not do so—he worked remotely from Israel. *See* Pl. 56.1 ¶¶ 14, 19–20. Mish Mish's motion turns on whether a reasonable jury, viewing the

8

evidence in the light most favorable to non-movant Spiegler, would have to find Spiegler, in not complying with that term, to have materially breached.

A material breach is one that "go[es] to the root of the agreement between the parties." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004) (quoting *Frank Felix*, 111 F.3d at 289); *see also Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 295 (S.D.N.Y. 2005). A party's obligation to perform under a contract is excused only where the other party's breach "defeats the object of the parties in making the contract." *Frank Felix*, 111 F.3d at 289 (citation omitted).

As the Report recognizes, the materiality of a breach under New York law is a mixed question of fact and law that is "usually more of the former and less of the latter" and should be decided on summary judgment only "where the inferences are certain." Report at 8 (quoting *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 686 (S.D.N.Y. 2011), and *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015)). In evaluating whether a breach was material, courts consider factors such as the "ratio of the performance already rendered to that unperformed," the "degree to which the purpose behind the contract has been frustrated," and "extent to which the aggrieved party has already received the substantial benefit of the promised performance." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, No. 22 Civ. 5276, 2024 WL 3676931, at *15 (S.D.N.Y. Aug. 6, 2024) (quoting *Hadden v. Consol. Edison Co. of New York*, 34 N.Y.2d 88, 96 (1974)). Where the evidence is "clear and substantially uncontradicted," however, courts may resolve materiality as a matter of law on summary judgment. *Falls Lake Nat'l Ins. Co. v. Nexus Builders Corp.*, No. 21 Civ. 1403, 2024 WL 708194, at *3 (S.D.N.Y. Feb. 21, 2024); *Pall Mall Corp. Hosp., Inc. v. Gage Travel, Inc.*, No. 00 Civ. 851, 2000 WL

9

1745046, at *3 (S.D.N.Y. Nov. 28, 2000) (finding that a material breach had occurred and resolving summary-judgment motion on that basis).

The Report carefully analyzed the assembled evidence bearing on Spiegler's breach and found the materiality element incapable of resolution at summary judgment. Mish Mish makes two arguments why the Report erred in denying summary judgment on this element. *See* Def. Obj. at 5–11. Neither is persuasive.

First, Mish Mish argues that the text of the Agreement makes the location provision material. *See id.* at 5. The Agreement requires Spiegler to "operate out of the offices of Company" and states that "the Employee's primary office shall be the Company office" located at "135 West 41st Street." *Id.* at 5 (quoting Agreement at 2, 11).

The Agreement does not, however, term this requirement material. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95–98 (2d Cir. 2007) (parties' "clear[]" and "mutual" agreement as to what constitutes a material term informs court's materiality inquiry); *cf. Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019) ("The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."). And the fact that an agreement sets forth an obligation of a party does not automatically make that obligation material. Otherwise, all obligations contained in an agreement would necessarily be material. *See, e.g., Wechsler*, 330 F. Supp. 2d at 416 (breach of express agreement terms non-material insofar as such "did not defeat the object of the agreements" because "these problems did not ultimately deprive [plaintiff] from the benefit it reasonably expected"). Rather, as the Report recognized, the materiality of a contract term must be evaluated in the context of the overall agreement. *See* Report at 10–11; *see also Greenwich Fin. Servs. Distressed Mortg. v. Countrywide Fin. Corp.*, 654 F. Supp. 2d 192, 202 (S.D.N.Y.

10

2009) ("The intention of parties . . . is ascertained, not from one provision or particular words or phrases. . . [T]he entire contract must be considered."); *S. Rd. Assocs., LLC v. Int'l Bus. Machines Corp.*, 4 N.Y.3d 272, 277 (2005) (same).

Here, as the Report recognized, the evidence supplies a solid basis upon which a jury could conclude that Spiegler's breach of the Agreement's location provision did not strike at the "root" of the agreement between the parties. *Kitchen Winners*, 2024 WL 3676931, at *15. For one, Mish Mish did not maintain offices at the 135 West 41st Street location cited in the Agreement at the time the Agreement was executed or at any time thereafter. Def. 56.1 Reply ¶¶ 22, 26. Thus, although Spiegler could have worked in person at Mish Mish's successor Manhattan venues (at Varick and Hudson Streets), he literally could not have complied with the "Place of Services" provision as written. A jury could view the impossibility of complying with the provision as written as undermining Mish Mish's argument that its inclusion in the Agreement bespoke its materiality. *See Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*, 333 F. Supp. 2d 131, 143 (S.D.N.Y. 2004) (breach non-material where performance of contract's literal terms would "set up an impossible standard of perfect performance" (citing *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678–79 (2d Cir. 1989) (performance of most, but not all, of contractual obligation not so substantial a breach as to defeat object of parties in making contract)).[3]

---

[3] Spiegler has not raised an impossibility defense, presumably because working in New York, albeit not at the precise location indicated in the Agreement, was possible. In its reply in support of its motion for summary judgment, Mish Mish argued that Spiegler had not shown compliance to be impossible. *See* Def. Reply at 5–6. Judge Gorenstein rejected that argument as irrelevant, because Spiegler had not invoked the impossibility doctrine, and Mish Mish had not brought a breach of contract claim against Spiegler. *See* Report at 7.

11

Moreover, as the Report recognized, the text of the Agreement expressly contemplates remote work. It authorizes Spiegler to work "from virtual offices, including the Employee's home, as needed from time to time." Report at 9 (quoting Agreement ¶ 4). A reasonable jury could find from this provision that physical presence was not necessary to Spiegler's effective discharge of his work obligations, that both parties anticipated flexibility in work arrangements, and that the physical-presence provision was included to give Mish Mish the capacity to order Spiegler to be present in person from time to time, and/or in a nod to the requirements of Spiegler's visa. The text of the Agreement thus does not ineluctably support that Spiegler's remote work marked a material breach. *See Greenwich*, 654 F. Supp. at 202.

Second, Mish Mish argues that the circumstances surrounding the Agreement's formation establish that the contract's essential purpose was to mandate Spiegler's presence in the United States. *See* Def. Obj. at 2. Mish Mish is correct that the Agreement was formalized only after Spiegler made known that, to continue working for Mish Mish in New York, he required its sponsorship of his visa. Pl. 56.1 ¶¶ 8–9. Mish Mish argues that, in helping secure Spiegler a visa, it "put its money and resources where its mouth was," and that Spiegler's later decision to work remotely from Israel defeated the parties' shared purpose of cementing his residency in the United States. Def. Br. at 10; *see also* Def. Obj. at 7.

This argument is not without force. Mish Mish may argue that the Agreement was entered into to help enable Spiegler to obtain a visa permitting him to work in the United States. Although the record is unclear on this point, perhaps, too, Mish Mish may argue that Spiegler's relocation undermined representations it had made to immigration authorities in securing the visa. However, even assuming Mish Mish's sponsorship of Spiegler's employment visa may reflect a shared expectation that he would work from the United States, it does not establish that

12

physical presence in Mish Mish's New York office was important to Mish Mish. A jury could alternatively find that Mish Mish, far from finding in-person work necessary to its business, was merely accommodating a valued employee who then aspired to stay in New York and required a visa to continue working here.

Critically, too, as the Report recognized, a jury could find the parties' conduct after the formation of the Agreement supports that the requirement that he work in New York was non-material. *See Trireme Energy Holdings, Inc. v. RWE Renewables Americas, LLC*, 757 F. Supp. 3d 445, 487 (S.D.N.Y. 2024) ("Courts have deemed parties' course of performance as the 'best evidence of the intent of the parties to a contract,' finding that such post-contract conduct is 'highly probative of [the parties'] state of mind at the time the contract was signed.'" (collecting cases)); *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 459 (2004) (relying on post-contract formation course-of-dealing evidence to interpret a contract). As Judge Gorenstein noted, the evidence reflects that Mish Mish engaged Spiegler for nearly a year after he had relocated to Israel and continued to benefit from his remote work during that period. *See* Report at 4–5; Def. Reply 56.1 ¶ 40, 42–45 (between December 2019 and September 2020, Mish Mish was aware that Spiegler was in Israel, but continued to accept, benefit from, and pay for his work). Indeed, had this breach-of-contract lawsuit been brought by Mish Mish, claiming that Spiegler breached in working remotely, Mish Mish might have been found to have waived that claim by acquiescing in that practice. *See Grain D'Or LLC v. Wizman*, No. 21 Civ. 10652, 2023 WL 5609101, at *9 (S.D.N.Y. Aug. 30, 2023) ("It is well-established that where a party to an agreement has actual knowledge of another party's breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of the

13

breach."); *Medinol Ltd. v. Bos. Sci. Corp.*, 346 F. Supp. 2d 575, 620 (S.D.N.Y. 2004) (collecting such cases).

Mish Mish's post-formation conduct, which indicates acceptance of Spiegler's remote work arrangements, would give a jury a sound basis on which to find that his breach of the location provision was immaterial. *See, e.g.*, *Shann v. Dunk*, 84 F.3d 73, 79 (2d Cir. 1996) (declining to restrict analysis to "four corners of the contract" where parties treated noncompete clause as a "fiction," as courts must consider "economic reality and the views of the parties" in assessing materiality); *cf. CDO Plus Master Fund Ltd. v. Wachovia Bank*, No. 7 Civ. 11078, 2009 WL 2033048, at *6 (S.D.N.Y. July 13, 2009) (waiver of breach-of-contract claim where plaintiff had knowledge of defendant's breach yet continued to perform under and accept the benefits of the contract).

The Court thus adopts the Report's recommendation to deny Mish Mish's summary judgment motion on this ground. This case, barring settlement, will now proceed to trial. The jury will decide the elements of Spiegler's breach-of-contract claim, including whether Spiegler substantially performed his obligations under the Agreement or was in material breach, whether Mish Mish breached, and whether Mish Mish's breach caused Spiegler damages.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report's recommendation and denies Mish Mish's motion for summary judgment. The parties are directed to, by August 25, 2025, file a joint pretrial order fully consistent with this Court's individual rules. A pretrial conference is hereby scheduled for **September 4, 2025, at 2 p.m. in Courtroom 1305 of the Thurgood Marshall United States Courthouse**. The Court also, by separate order, refers the case to Judge Gorenstein for settlement purposes.

The Court respectfully directs the Clerk of Court to close the motion pending at Docket 65.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 28, 2025
New York, New York